ORPE
Original Petition
1999219

CAUSE NO. 12-DCV--200224

| | | |
|---|---|---|
| LATISHA STATEN AND ROBERT STATEN | § § § | IN THE DISTRICT COURT |
| v. | § § § | OF FORT BEND COUNTY, TEXAS |
| LEX SPECIAL ASSETS, LLC | § § | 240th JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Latisha Staten and Robert Staten, Plaintiffs herein, filing this their Original Petition and Request for Disclosures, complaining of Lex Special Assets, LLC, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1. Plaintiffs intend to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2. Latisha Staten is an individual who resides in Fort Bend County, Texas and may be served with process on the undersigned legal counsel.

3. Robert Staten is an individual who resides in Fort Bend County, Texas and may be served with process on the undersigned legal counsel.

4. Lex Special Assets, LLC is a corporation formed under the laws of the State of Delaware which may be served with process on its registered agent as follows:

> Lex Special Assets, LLC
> c/o Corporation Service Company
> 211 E. 7th Street, Suite 620
> Austin, Texas 78701

**FILED**

AUG 1 7 2012

AT 3:29 P.M.

Annie Rebecca, Deputy

Clerk District Court, Fort Bend Co., TX

### JURISDICTION AND VENUE

5. The Court has jurisdiction over the Lex Special Assets, LLC because the Defendant is a corporation formed under the laws of the State of Delaware which conducts

EXHIBIT
B-5

business in Fort Bend County, Texas.

6.      The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Fort Bend County, Texas because the subject matter of this lawsuit involves real property which is located in Fort Bend County, Texas. Further, all or a substantial part of the events or omissions giving rise to the Plaintiffs' causes of action occurred in Fort Bend County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

7.      On or about February 23, 2007, the Plaintiffs purchased the real property and the improvements thereon located at 2926 Lake Villa Drive, Missouri City, Texas 77459 which is also known as Lot Thirty-Three (33), in Block Four (4), of amending plat of replat Lake Shore Harbour, Section One (1), a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Slide No. 2573/A of the Plat Records of Fort Bend County, Texas (the "Property").

8.      During the process of purchasing the Property, the Plaintiffs executed an Adjustable Rate Note with GE Money Bank, FSB ("GE") for the principal sum of Three Hundred Thirty-One Thousand Eight Hundred Seventy-Two and 00/100 Dollars ($331,872.00). A true and correct copy of the Adjustable Rate Note is attached hereto as Exhibit "1" and incorporated herein for all purposes.

9.      Also, during the process of purchasing the Property, the Plaintiffs executed a Deed of Trust in which GE Money Bank, FSB is named as the Lender and Joe E. Shaw is named as the Trustee. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein for all purposes.

10.     Upon information and belief, the aforementioned Adjustable Rate Note and Deed of Trust were subsequently transferred to Lex Special Assets, LLC ("Lex").

11.     Special Loan Servicing, LLC ("SLS") acted as the mortgage servicer on behalf of Lex and, as such, was Lex's agent.

12.     The Plaintiff began to have financial difficulties over time and, as a direct result, became delinquent in their mortgage payments to Lex.

13.     In that regard, the Plaintiffs entered into discussions with SLS regarding the HAMP loan modification program during the month of August 2011.

14.     During the following month, the Plaintiffs began submitting their financial documents to SLS to begin review of the Plaintiffs' loan for acceptance into the HAMP loan modification program.

15.     The Plaintiffs continued to submit their financial documents in response to SLS's request for additional financial information over the next several months with the expectation that they would receive a HAMP loan modification. Instead, the Plaintiffs received a letter from Lex's attorneys dated February 13, 2012 informing them that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. In addition, the Plaintiffs were informed that Lex intended to sell the property at a foreclosure sale on March 06, 2012 - this did not occur. A true and correct copy of the aforementioned correspondence is attached hereto as Exhibit "3" and incorporated herein for all purposes.

16.     The Plaintiffs sent a letter to SLS requesting a decision regarding their loan modification. SLS responded by sending a correspondence dated March 08, 2012 to the Plaintiffs. A true and correct copy is attached hereto as Exhibit "4" and incorporated herein for all purposes. In addition, the Plaintiffs received a letter from Lex's attorneys dated March 12, 2012 informing them that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. Also, the Plaintiffs were informed that Lex intended to sell the property at a foreclosure sale on April 03, 2012 - this did not occur. A true and correct copy of the aforementioned correspondence is attached hereto as Exhibit "5" and incorporated herein for all purposes.

17.     SLS eventually responded to the Plaintiffs' request by sending a default letter dated May 31, 2012. A true and correct copy of the aforementioned correspondence is attached hereto as Exhibit "6" and incorporated herein for all purposes. In addition, the Plaintiffs received a letter

from Lex's attorneys dated June 06, 2012 informing them that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. Also, the Plaintiffs were informed that Lex intended to sell the property at a foreclosure sale on July 03, 2012 - this did not occur. A true and correct copy of the aforementioned correspondence is attached hereto as Exhibit "7" and incorporated herein for all purposes.

18.     The aforementioned foreclosure sale did not occur; nevertheless, it is the Plaintiffs' understanding that Lex intends to conduct a foreclosure sale of their property in the near future in defiance of their legal rights.

**FIRST CAUSE OF ACTION:**
**BREACH OF CONTRACT**

19.     To the extent not inconsistent herewith, Latisha Staten and Robert Staten ("Staten") incorporates by reference the allegations made in paragraphs 1 through 18 as if set forth fully herein.

20.     The actions committed by Lex constitute a breach of contract because:

      A.     There exists a valid, enforceable contract between Staten and Lex;

      B.     Staten has standing to sue for breach of contract;

      C.     Staten performed, tendered performance, or was excused from performing her contractual obligations;

      D.     Lex breached the contract; and

      E.     The breach of contract by Lex caused Staten's injury.

**SECOND CAUSE OF ACTION:**
**NEGLIGENCE**

21.     To the extent not inconsistent herewith, Staten incorporates by reference the allegations made in paragraphs 1 through 20 as if set forth fully herein.

22.     The actions committed by Lex constitute negligence because:

      A.     Lex owed a duty to Staten;

      B.     Lex breached the duty; and

C.    The breach proximately caused Staten's injury.

### DAMAGES:
### ACTUAL DAMAGES

23.    The Plaintiffs are entitled to recover their actual damages from Lex for which the Plaintiffs plead in an amount which does not exceed the jurisdictional limits of this Court.

### ATTORNEYS' FEES

24.    The Plaintiffs were forced to employ the undersigned attorneys to represent them and have agreed to pay them reasonable attorneys' fees for their services. The Plaintiffs are entitled to recover their reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code.

### CONDITIONS PRECEDENT

25    All conditions precedent to the Plaintiffs' right to bring these causes of action have been performed, have occurred, or have been waived.

### REQUEST FOR DISCLOSURES

26.    Lex Special Assets, LLC is hereby requested to disclose to Latisha Staten and Robert Staten, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully request that:

A.    The Defendant be cited to appear and answer herein;

B.    Upon final hearing or trial hereof, the Court order a judgment in favor of Latisha

Staten and Robert Staten against Lex Special Assets, LLC for their actual damages,

reasonable attorneys' fees, and all costs of court, and such other and further relief,

both general and special, at law or in equity, to which the Plaintiffs may be

entitled.

Respectfully submitted,

VILT AND ASSOCIATES, P.C.

By:    _____

ROBERT C. VILT

Texas Bar Number 00788586

5177 Richmond Avenue, Suite 1230

Houston, Texas 77056

Telephone:    713.840.7570

Facsimile:    713.877.1827

ATTORNEYS FOR PLAINTIFFS

LATISHA STATEN AND ROBERT STATEN

CAUSE NO. 12-D CV -- 200224

| | | |
|---|---|---|
| LATISHA STATEN AND<br>ROBERT STATEN | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF FORT BEND COUNTY, TEXAS |
| | § | |
| LEX SPECIAL ASSETS, LLC | § | 240 JUDICIAL DISTRICT |
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF FORT BEND | § | |

## AFFIDAVIT OF LATISHA STATEN

BEFORE ME, the undersigned authority, on this day personally appeared Latisha Staten who, being duly sworn, deposes and says:

1.  "My name is Latisha Staten. I am a Plaintiff in the above-captioned lawsuit. I have read the Plaintiff's Original Petition and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2.  On or about February 23, 2007, my husband and I purchased the real property and the improvements thereon located at 2926 Lake Villa Drive, Missouri City, Texas 77459 which is also known as Lot Thirty-Three (33), in Block Four (4), of amending plat of replat Lake Shore Harbour, Section One (1), a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Slide No. 2573/A of the Plat Records of Fort Bend County, Texas (the "Property").

3.  During the process of purchasing the Property, we executed an Adjustable Rate Note with GE Money Bank, FSB ("GE") for the principal sum of Three Hundred Thirty-One Thousand Eight Hundred Seventy-Two and 00/100 Dollars ($331,872.00).

4.  Also, during the process of purchasing the Property, we executed a Deed of Trust in which GE Money Bank, FSB is named as the Lender and Joe E. Shaw is named as the Trustee.

5.  Upon information and belief, the aforementioned Adjustable Rate Note and Deed of Trust were subsequently transferred to Lex Special Assets, LLC ("Lex").

6.  Special Loan Servicing, LLC ("SLS") acted as the mortgage servicer on behalf of Lex and, as such, was Lex's agent.

7.  We began to have financial difficulties over time and, as a direct result, became delinquent in our mortgage payments to Lex.

8.  In that regard, we entered into discussions with SLS regarding the HAMP loan modification program during the month of August 2011.

9.    During the following month, we began submitting our financial documents to SLS to begin review of our loan for acceptance into the HAMP loan modification program.

10.   We continued to submit our financial documents in response to SLS's requests for additional financial information over the next several months with the expectation that we would receive a HAMP loan modification. Instead, we received a letter from Lex's attorneys dated February 13, 2012 informing us that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. In addition, we were informed that Lex intended to sell the property at a foreclosure sale on March 06, 2012 - this did not occur.

11.   We sent a letter to SLS requesting a decision regarding our loan modification. SLS responded by sending a correspondence dated March 08, 2012 to us. In addition, we received a letter from Lex's attorneys dated March 12, 2012 informing us that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. Also, we were informed that Lex intended to sell the property at a foreclosure sale on April 03, 2012 - this did not occur.

12.   SLS eventually responded to our request by sending a default letter dated May 31, 2012. In addition, we received a letter from Lex's attorneys dated June 06, 2012 informing us that Lex had accelerated the maturity of the loan and declared the entire balance due and payable in full. Also, we were informed that Lex intended to sell the property at a foreclosure sale on July 03, 2012 - this did not occur.

13.   Although the aforementioned foreclosure sale did not occur; nevertheless, it is our understanding that Lex intends to conduct a foreclosure sale of our property in the near future in defiance of our legal rights.

I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.

LATISHA STATEN

SUBSCRIBED AND SWORN TO BEFORE ME on this the _13_ day of August, 2012.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires:
_02 - 08 - 2015_

Marilyn Goodsell
My Commission Expires
02/08/2015


EXHIBIT
1

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

MIN: 1001363-0011831388-0

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| | | |
|---|---|---|
| FEBRUARY 23, 2007 | HOUSTON | TEXAS |
| [Date] | [City] | [State] |

2926 LAKE VILLA DRIVE
MISSOURI CITY, TX 77459
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 331,872.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GE MONEY BANK, A FEDERAL SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.8500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on APRIL , 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
4828 LOOP CENTRAL DRIVE
HOUSTON, TX 77081-2226
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,875.70 . This amount may change.

Initials: _____

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the     1st     day of  MARCH   , 2009      and on that day every 6th   month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"),as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
Six and One-Quarter              percentage points (  6 . 2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       12.8500   % or less than      9.8500     %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than    One                percentage points (   1.0000   %) from the rate of interest I have been paying for the preceding   6 months. My interest rate will never be greater than 16.3500    % or less than      9.8500     %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying

Loan Number:    11831388
Multistate Adjustable Rate Note (LIBOR Index) - Single Family

Initials_____

Modified Form 3590 1/01

L35902

my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.0000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations,

Loan Number:   11831388

Multistate Adjustable Rate Note (LIBOR Index) - Single Family

Initials: ___

Modified Form 3590 1/01

Page 3 of 5

L35903

including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Loan Number:   11831388
Multistate Adjustable Rate Note (LIBOR Index) - Single Family

Initials: _____
Modified Form 3590 1/01

Page 4 of 5

L35904

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
LATISHA C. STATEN                -Borrower

_____ (Seal)
ROBERT STATEN                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*



After Recording Mail to:
GE MONEY BANK, A FEDERAL SAVINGS BANK

3100 THORNTON AVENUE
BURBANK, CA 91504

Prepared by:
MCGLINCHEY STAFFORD AND YOUNGBLOOD & BENDALIN, LLP

RON BENDALIN
2711 NORTH HASKELL AVE., SUITE 2700 LB 25
DALLAS, TX 75204
(214)257-1700

——————————— [Space Above This Line For Recording Data] ———————————

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## DEED OF TRUST

MIN: 1001363-0011831388-0

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)      "Security Instrument" means this document, which is dated      FEBRUARY 23, 2007
together with all Riders to this document.
(B)      "Borrower" is
LATISHA C. STATEN, & ROBERT STATEN, HUSBAND AND WIFE

Borrower is the grantor under this Security Instrument.
(C)      "Lender" is
GE MONEY BANK, A FEDERAL SAVINGS BANK

Lender is a      federal savings bank                        organized and existing under the
laws of      THE UNITED STATES OF AMERICA          . Lender's address is
3100 THORNTON AVENUE
BURBANK, CA 91504
Lender includes any holder of the Note who is entitled to receive payments under the Note.

Initials: _RS_

Loan Number: 11831388
TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3044 1/01
Page 1 of 16                                                                                    C30061

(D)    "Trustee" is
JOE E. SHAW

Trustee's address is
1717 ST. JAMES PLACE, SUITE 136, HOUSTON, TX 77056
(E)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.   MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)    "Note" means the promissory note signed by Borrower and dated    FEBRUARY 23, 2007
The Note states that Borrower owes Lender

THREE HUNDRED THIRTY-ONE THOUSAND EIGHT HUNDRED SEVENTY-TWO AND 00/100
Dollars (U.S. $       331,872.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     MARCH   01, 2037

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Biweekly Payment Rider | [ ] 1-4 Family Rider |
| [ ] Other(s) [specify] | [X] Planned Unit Development Rider | |

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L)    "Electronic Funds Transfer"  means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)    "Escrow Items" means those items that are described in Section 3.
(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Loan Number: 11831388

Initials: ___

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                         Form 3044 1/01
Page 2 of 16                                                                                C30062

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of    FORT BEND                :

LOT THIRTY-THREE (33), IN BLOCK FOUR (4), OF AMENDING PLAT OF REPLAT LAKE SHORE HARBOUR, SECTION ONE (1), A SUBDIVISION IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2573/A OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

Parcel Identification Number:  N/A

which currently has the address of
2926 LAKE VILLA DRIVE
                [Street]
MISSOURI CITY                                                    , Texas       77459
          [City]                                                                          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the rights to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Loan Number: 11831388                                                        Initials: _____

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3044 1/01
Page 3 of 16                                            C30063

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Loan Number: 11831388

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 4 of 16

Initials: 

Form 3044 1/01
C30064

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the

Initials: _____

Loan Number: 11831388

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 5 of 16

Form 3044 1/01

C30065

Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to

Loan Number: 11831388

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 6 of 16

Initials: _____

Form 3044 1/01
C30066

restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender

with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.**   Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

Loan Number: 11831388

Initials: _____

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3044 1/01
Page 10 of 16
C3006A

Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses

Loan Number: 11831398

Initials: RS

TEXAS -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3044 1/01

C3006D

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
LATISHA C. STATEN                -Borrower

_____ (Seal)
ROBERT  STATEN                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF TEXAS,
COUNTY OF ____Morris____

This instrument was acknowledged before me on _____Feb  23_____ , _2007_ , (date) by
LATISHA C. STATEN, ROBERT STATEN

(name or names of person or persons acknowledging).

_____
Signature of Officer

(Seal)

_____
Printed Name of Officer

ANGELA SCOTT
Notary Public, State of Texas
My Commission Expires 08-20-2009

_____
Title of Officer

My Commission Expires: _____

Loan Number 001388

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 16 of 16

Form 3044 1/01
C3006G



**EXHIBIT**

**3**

HUGHES, WATTERS & ASKANASE, L.L.P.
ATTORNEYS AT LAW
333 CLAY, SUITE 2900
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF ACCELERATION ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

February 13, 2012

Latisha C. Staten
2926 Lake Villa Drive
Missouri City, Texas 77459

Re:  Loan No: 1005359935 ('Loan')
Property Address: 2926 Lake Villa Drive, Missouri City, Texas 77459

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

1.     The undersigned represents LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note') secured by the Deed of Trust encumbering the Property, both dated February 23, 2007 (the Note and Deed of Trust being collectively referred to as the 'Loan') and is authorized to deliver this letter on its behalf. You are further notified that LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER is the Mortgagee. SPECIALIZED LOAN SERVICING, LLC, as Mortgage Servicer, is representing the Mortgagee, whose address is 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129-2386. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

2.     Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire balance of the Loan due and payable in full

3.     In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on March 06, 2012, at the place designated by the Fort Bend County Commissioners Court pursuant to Section 51.002, and the Property will be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 1:00 p.m. and 4:00 p.m. **The earliest time the foreclosure sale will begin will be 1:00 p.m.**

4.     The amount necessary prevent this foreclosure sale may be determined by contacting the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818. Payment must be in certified funds or other form of payment acceptable to our client.

## HUGHES, WATTERS & ASKANASE, L.L.P.
### ATTORNEYS AT LAW

Latisha C. Staten
February 13, 2012
Notice of Acceleration
Page 2

5.    A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.

6.    Except as otherwise set out herein, under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7.    This letter constitutes notice required by law and the terms of the applicable Loan documents. To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law. If you receive this notice and you are not a debtor, this notice is for informational purposes only.

Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED
No. 7011 1150 0001 2402 0027

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**Fort Bend County Deed of Trust:**

**Dated:** February 23, 2007

**Amount:** $331,872.00

**Grantor(s):** LATISHA C. STATEN & ROBERT STATEN, husband and wife

**Original Mortgagee:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR GE MONEY BANK, A FEDERAL SAVINGS BANK

**Current Mortgagee:** LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER
**Mortgagee Servicer and Address:** SPECIALIZED LOAN SERVICING, LLC, 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129-2386
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

**Recording Information:** under File No. 2007026219, Fort Bend County, Texas

**Legal Description:** LOT THIRTY-THREE (33), IN BLOCK FOUR (4), OF AMENDING PLAT OF REPLAT LAKE SHORE HARBOUR, SECTION ONE (1), A SUBDIVISON IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2573/A OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS (Property)

**Date of Sale:** March 6, 2012 between the hours of 1:00 p.m. and 4:00 p.m.

**Earliest Time Sale Will Begin:** 1:00 p.m.

**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the Fort Bend County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

AUDREY LEWIS or JEFF LEVA or THERESA PERALES or SANDY DASIGENIS have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.

Dated February 13, 2012.

HUGHES, WATTERS & ASKANASE, L.L.P.
333 Clay, Suite 2900
Houston, Texas 77002
Reference: Fsls7/0377 1005359935

AUDREY LEWIS or JEFF LEVA or THERESA PERALES
or SANDY DASIGENIS (Substitute Trustees)
1015 Cardinal Avenue, Sugar Land, Texas 77478

●*La Tisha C. Staten*
*1005 359 935*

## HUGHES, WATTERS & ASKANASE, L.L.P.
### ATTORNEYS AT LAW

Robert Staten
March 12, 2012
Notice of Acceleration
Page 2

5. A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.

6. Except as otherwise set out herein, under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7. This letter constitutes notice required by law and the terms of the applicable Loan documents. To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law. If you receive this notice and you are not a debtor, this notice is for informational purposes only.

Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED
No. 7011 1150 0001 2405 9287

● *La Tisha C. Staten*
*1005359935*

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**Fort Bend County Deed of Trust:**

**Dated:** February 23, 2007

**Amount:** $331,872.00

**Grantor(s):** LATISHA C. STATEN & ROBERT STATEN, husband and wife

**Original Mortgagee:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR GE MONEY BANK, A FEDERAL SAVINGS BANK

**Current Mortgagee:** LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER
**Mortgagee Servicer and Address:** SPECIALIZED LOAN SERVICING, LLC, 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129-2386
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

**Recording Information:** under File No. 2007026219, Fort Bend County, Texas

**Legal Description:** LOT THIRTY-THREE (33), IN BLOCK FOUR (4), OF AMENDING PLAT OF REPLAT LAKE SHORE HARBOUR, SECTION ONE (1), A SUBDIVISON IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2573/A OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS (Property)

**Date of Sale:** April 3, 2012 between the hours of 1:00 p.m. and 4:00 p.m.

**Earliest Time Sale Will Begin:** 1:00 p.m.

**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the Fort Bend County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

AUDREY LEWIS or JEFF LEVA or THERESA PERALES or SANDY DASIGENIS have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

Dated March 12, 2012.

HUGHES, WATTERS & ASKANASE, L.L.P.
333 Clay, Suite 2900
Houston, Texas 77002
Reference: Fsls7/0377 1005359935

AUDREY LEWIS or JEFF LEVA or THERESA PERALES or SANDY DASIGENIS (Substitute Trustees)
1015 Cardinal Avenue, Sugar Land, Texas 77478

  
 

05/31/12          1005359935            0380414 000000197 09SFC2 0068474            Pg 2 of 2



If your loan is not brought current, inspections of your property will be made and you will be assessed fees for that purpose as permitted under state law. Additionally, if your property is found to be vacant and unsecured, the mortgage holder will have it secured and will charge you for the cost of securing. You may also be liable for reasonable attorney fees and costs incurred in connection with any proceedings on the Note and Trust Deed and such other costs as may be allowed by law. In addition, you may be liable for any deficiency that may be established as a result of the foreclosure action.

<u>In accordance with the Fair Debt Collection Practices Act, you are hereby given notice of the following:</u>

1.  Although you are not required to pay the total debt (or balance) of the account prior to its maturity or acceleration, federal law requires Specialized Loan Servicing to provide you with the amount of the debt. As of 05/31/12, the amount of the unpaid principal balance is $330,784.43. This letter is in no way intended as a payoff statement and you must not rely upon this letter for purposes of paying off your mortgage.

2.  Specialized Loan Servicing LLC is the current creditor to whom the debt is owed. If you request in writing within 30 days after you receive this notice, we will provide you with the name and address of the original creditor if different than the current creditor.

3.  Unless within 30 days after you receive this notice you dispute the validity of the debt or a portion thereof, the debt will be assumed to be valid. If you notify us in writing within 30 days after you receive this notice that you dispute the debt or a portion thereof, we will obtain and mail to you verification of the debt.

4.  Please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt, please be advised that this letter constitutes neither a demand for payment of the captioned debt nor a notice of personal liability to any recipient hereof who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

If you believe that you are entitled to the benefits as outlined in the Servicemembers' Civil Relief Act, you should promptly provide us with evidence of your active duty status.

Specialized would like you to be aware if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD approved nonprofit organizations serving your area.

If you have any questions, regarding this letter, please contact Specialized Loan Servicing, LLC at 800-306-6062 Monday through Friday, from 6:00 a.m. to 6:00 p.m. (Mountain Time). TDD number - 800-268-9419 Monday through Friday, 8:00 a.m. to 5:00 p.m. (Mountain Time).

Specialized requests that all payments be made in **certified funds, cashier's check or money order(s)** payable to and mailed to Specialized Loan Servicing LLC, Attention: **Customer Assistance Department** to one of the below addresses (always include Loan Number with your payment):



| *VIA Regular Mail* | *VIA Over Night Address* | *VIA Western Union Quick Collect* |
|---|---|---|
| Specialized Loan Servicing, LLC | Specialized Loan Servicing, LLC | Code City: PAYSLS |
| PO Box 105219 | 8742 Lucent Blvd, Suite 300 | Code State: CO |
| Atlanta, GA 30348-5219 | Highlands Ranch, CO 80129 | Reference: Loan Number |

The matters discussed herein are of extreme importance. We trust you will give them appropriate attention. It is the practice and policy of SLS is to work with customers that have experienced a hardship. We have many alternative programs available to assist customers in avoiding a foreclosure action. Please visit our website address www.sls.net for options or feel free to contact our Customer Assistance area at 800-306-6062 where one of our experienced and skilled Agents may assist you. Do not delay. There is help available for most customers. We cannot assist you if you do not contact us. We are committed to providing you with professional and courteous service. We respect our customers, especially those that are having difficulties and will always strive to treat you with the dignity you deserve.

SPECIALIZED LOAN SERVICING, LLC
Customer Assistance Department



HUGHES, WATTERS & ASKANASE, L.L.P.
ATTORNEYS AT LAW
333 CLAY, SUITE 2900
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF ACCELERATION ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

June 06, 2012

Latisha C. Staten
2926 Lake Villa Drive
Missouri City, Texas 77459

Re:    Loan No: 1005359935 ('Loan')
       Property Address: 2926 Lake Villa Drive, Missouri City, Texas 77459

   **THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

   1.    The undersigned represents LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note') secured by the Deed of Trust encumbering the Property, both dated February 23, 2007 (the Note and Deed of Trust being collectively referred to as the 'Loan') and is authorized to deliver this letter on its behalf. You are further notified that LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER is the Mortgagee. SPECIALIZED LOAN SERVICING, LLC, as Mortgage Servicer, is representing the Mortgagee, whose address is 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129-2386. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

   2.    Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client accelerated the maturity of the Loan, and declared the entire balance of the Loan due and payable in full

   3.    In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on July 03, 2012, at the place designated by the Fort Bend County Commissioners Court pursuant to Section 51.002, and the Property will be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 1:00 p.m. and 4:00 p.m. **The earliest time the foreclosure sale will begin will be 1:00 p.m.**

   4.    The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818. Payment must be in certified funds or other form of payment acceptable to our client.

## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

**Fort Bend County Deed of Trust:**

    **Dated:** February 23, 2007

    **Amount:** $331,872.00

    **Grantor(s):** LATISHA C. STATEN & ROBERT STATEN, husband and wife

    **Original Mortgagee:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR GE MONEY BANK, A FEDERAL SAVINGS BANK

    **Current Mortgagee:** LEX SPECIAL ASSETS, LLC BY PAMI, LLC AS ITS MANAGING MEMBER
    **Mortgagee Servicer and Address:** SPECIALIZED LOAN SERVICING, LLC, 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129-2386
    Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

    **Recording Information:** under File No. 2007026219, Fort Bend County, Texas

    **Legal Description:** LOT THIRTY-THREE (33), IN BLOCK FOUR (4), OF AMENDING PLAT OF REPLAT LAKE SHORE HARBOUR, SECTION ONE (1), A SUBDIVISON IN FORT BEND COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 2573/A OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS (Property)

**Date of Sale:** July 3, 2012 between the hours of 1:00 p.m. and 4:00 p.m.

**Earliest Time Sale Will Begin:** 1:00 p.m.

**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the Fort Bend County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

AUDREY LEWIS or JEFF LEVA or THERESA PERALES or SANDY DASIGENIS have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.

HUGHES, WATTERS & ASKANASE, L.L.P.
333 Clay, Suite 2900
Houston, Texas 77002
Reference: Fsls7/0377 1005359935

AUDREY LEWIS or JEFF LEVA or THERESA PERALES
or SANDY DASIGENIS (Substitute Trustees)
1015 Cardinal Avenue, Sugar Land, Texas 77478